UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JULIAN AROCHO,

    Petitioner,

v.                              Case No.:  2:16-cv-910-FtM-99MRM

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

    Respondents.
_____/

## OPINION AND ORDER[1]

Before the Court is Petitioner Julian Arocho's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 1) filed on December 27, 2016.  The Secretary of the Department of Corrections filed her Response in Opposition (Doc. 7) on June 6, 2017.  The Petition is fully briefed and ripe for the Court's review.

## BACKGROUND

On April 30, 2010, Petitioner was charged with a four-count felony indictment for aggravated assault with a firearm, first degree burglary while armed, grand theft of a motor vehicle, and possession of a firearm by a minor.  (Ex. 1, at 3-4).  Petitioner, who was represented by Attorney Robert Harris, pled guilty to the charges in open court. (Ex. 1 at

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

89-101). On July 25, 2011, the Honorable Edward Volz, Circuit Judge for the Twentieth Judicial Circuit Court in and for Lee County, Florida, sentenced Petitioner to ten years in prison with ten years of probation upon release. (Ex. 1 at 215-245; Ex. 2 at 75-78).

Petitioner moved to withdraw his plea on August 22, 2011, alleging that he did not fully understand the circumstances surrounding his plea. Petitioner argued that trial counsel advised him he would receive the Youthful Offender designation if he would plea in open court, which did not happen. As a result of Petitioner's motion, a hearing was held on February 14, 2012. After listening to testimony from Petitioner, trial counsel, and members of Petitioner's family, the court denied the request to withdraw the plea. (Ex. 1 at 300-306). Petitioner appealed the denial to the Second District Court of Appeal which denied his appeal *per curiam*. (Ex. 5); *Arocho v State*, 105 So. 3d 529 (Fla. 2d DCA 2013).

On March 17, 2014, Petitioner moved for post-conviction relief under Fla. R. Crim P. 3.850. Petitioner's only ground claimed that he was denied effective assistance of counsel because trial counsel told him not to accept the State's offer of seven-years imprisonment and to instead plead in open to the court. The Post-Conviction Court summarily denied the motion on February 1, 2016. Petitioner appealed the Rule 3.850 Post-Conviction Court's denial. The Second District Court of Appeal affirmed the denial *per curiam*. (Ex. 12 at 1). Mandate issued on December 15, 2016. (Ex. 13). Petitioner now files the Petition in this Court claiming one ground for relief. Respondent concedes the Petition is timely filed and Petitioner's claim has been exhausted.

## STANDARD OF REVIEW

### *Antiterrorism Effective Death Penalty Act ("AEDPA")*

Under AEDPA, the standard of review is greatly circumscribed and highly deferential to the state courts. *Alston v. Fla. Dep't of Corr.*, 610 F.3d 1318, 1325 (11th Cir. 2010) (citations omitted). AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). The following legal principles apply to this case.

A federal court must afford a high level of deference to the state court's decision. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 181(2011). "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." Id. (internal quotations and citations omitted). *See also Harrington v. Richter*, 562 U.S. 86, 102 (2011) (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits." *Childers v. Floyd*, 642 F.3d 953, 967-68 (11th Cir. 2011). Thus, a state court's summary rejection of a claim, even without explanation,

qualifies as an adjudication on the merits that warrants deference by a federal court. *Id.*; *see also Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the court." *Childers v. Floyd*, 642 F.3d at 969 (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *see also Carey v. Musladin*, 549 U.S. 70, 74 (2006) (*citing Williams v. Taylor*, 529 U.S. 362, 412 (2000)) (recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision). "A state court decision involves an unreasonable application of federal law when it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Ponticelli v. Sec'y, Fla. Dep't of Corr.*, 690 F.3d 1271, 1291 (11th Cir. 2012) (internal quotations and citations omitted). The "unreasonable application" inquiry requires the Court to conduct the two-step analysis set forth in *Harrington v. Richter*, 562 U.S. at 86. First, the Court determines what arguments or theories support the state court decision; and second, the Court must determine whether "fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior" Supreme Court decision. *Id.* (citations omitted). Whether a court errs in determining facts "is even more

4

deferential than under a clearly erroneous standard of review." *Stephens v. Hall*, 407 F.3d 1195, 1201 (11th Cir. 2005). The Court presumes the findings of fact to be correct, and petitioner bears the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 131 S. Ct. at 1398. Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order. *Id.*

*Ineffective Assistance of Counsel*

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). *Newland v. Hall*, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. *Newland*, 527 F.3d at 1184. In *Strickland*, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, *i.e.*, "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, *i.e.*, there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose

5

result is reliable." *Strickland*, 466 U.S. at 688; *see also Bobby Van Hook*, 558 U.S. 4, 8 (2009); *Cullen v. Pinholster*, 131 S. Ct. at 1403 (2011).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Bobby Van Hook*, 130 S. Ct. at 17 (internal quotations and citations omitted). It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. *Id.* A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. An attorney is not ineffective for failing to raise or preserve a meritless issue. *Ladd v. Jones*, 864 F.2d 108, 109-10 (11th Cir. 1989); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

**DISCUSSION**

Petitioner's sole ground for relief states:

> [Petitioner] was deprived of his right to the effective assistance of counsel by his trial counsel erroneously advising him to forego a state offered plea agreement of seven (7) years imprisonment and enter a no contest plea open to the court.

(Doc. 1 at 5).[2] Petitioner asserts that trial counsel advised him to reject the State's offer of a seven-year prison term and to plead no contest in open court so he could be sentenced as a Youthful Offender. Petitioner states he rejected the State's offer because trial counsel told him he could obtain a Youthful Offender sentence, which would mean less time. Petitioner says that trial counsel told him he was risking nothing because the State would only seek a seven-year sentence at sentencing. Petitioner also states that trial counsel failed to advise him that the charges carried a three-year mandatory minimum prior to the entry of his plea. Petitioner argues that he should have his ten-year sentence vacated and the State's proffer of seven years offered again as he would have accepted the offer if he would have been properly advised. Respondent argues that the Post-Conviction Court properly denied Petitioner's ineffective assistance of counsel motion and that the record refutes Petitioner's claims.

The Supreme Court has long recognized that *Strickland* 's two-part inquiry applies to ineffective assistance of counsel arising out of the plea process. See *Hill v. Lockhart,* 474 U.S. 52, 57 (1985). In *Missouri v. Frye,* 566 U.S. 134 (2012), and *Lafler v. Cooper,* 566 U.S. 156 (2012), the Court clarified that the Sixth Amendment right to the effective

---

[2] Respondent claims that Petitioner is bring three and then four claims in his Petition (Doc. 7 at 6 and 12). Petitioner only raises one ground in his Petition and the Respondent only addresses that one ground in her Response. The Court concludes the errors are merely typos.

7

assistance of counsel extends specifically "to the negotiation and consideration of plea offers that lapse or are rejected." *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) (*citing In re Perez,* 682 F.3d 930, 932 (11th Cir.2012) (per curiam). The Court concluded that, to establish prejudice under *Strickland*, a defendant must show a reasonable probability that but for counsel's ineffectiveness: (1) "the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)"; (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler,* 132 S. Ct. at 1385; *see Frye,* 132 S. Ct. at 1409.

*(1) Whether the Offer of Seven Years would Have Been Presented to the Court*

The issue is whether Petitioner would have accepted the State's offer of seven years if not for trial counsel's advice to plea open to the Court.

At the hearing on Petitioner's motion to withdraw his plea, Petitioner testified as follows:

Q. "So, you signed a plea form that's admitted into this court swearing nobody promised you anything?"

A. "Right, but I did not know."

Q. "And then you appeared in this Courtroom and we swear to you to tell the truth, the whole truth, and nothing but the truth, isn't that right?"

A. "Yes."

Q. And you were advised that the charges you were facing carried a maximum of life without possibility of parole and prison?"

A. "Yes."

Q. "You understood that when you entered your plea?"

| | | |
|---|---|---|
| A. | "Yes." | |

Q. "You were also told, and I quote, you are giving up your right to all appeals except for two, whether the sentence is lawful and whether the court has jurisdiction; do you understand? And you said yes, sir."

A. "Yes."

Q "After that I followed, this is very important, by entry of this plea you are agreeing to be sentenced by the Judge with no promises; do you understand that?"

A. "Yes."

Q. "Do you understand that this means when you come back here for sentencing and Judge Volz gives you life without parole, you are agreeing to that?"

A. "Yes."

Q. "And that you cannot appeal, you cannot withdraw your plea, do you understand that?"

A. "Yes."

(Ex. 9 at 448-449).

After hearing the testimony and the evidence at the evidentiary hearing on his motion to withdraw, Judge Volz found:

> [Trial counsel] testified that he advised [Petitioner] to plea open to the court.  [Trial counsel] stated that he did not promise or guarantee [Petitioner] that if pled open to the Court the maximum sentence he faced would be seven years imprisonment.  [Trial counsel] further testified that he advised [Petitioner] that he faced a maximum sentence of life imprisonment without parole and, by entering an open plea to the Court that would be the maximum that the Court could sentence him.  [Trial counsel] testified that he did not guarantee that the State would seek more than a term of seven years imprisonment but that the potential was there to get more. [Trial counsel] testified that he advised [Petitioner] of the three-year mandatory sentence but could not recall the exact day that he advised him.  Trial counsel further testified that although he was going to seek a Youthful Offender sentence, he never promised [Petitioner] that he would receive a Youthful

9

Offender sentence. He also stated that he advised [Petitioner] that, although unlikely, he did face a life imprisonment sentence. [Trial counsel] further testified that he never advised [Petitioner] to say "yes" to every question at the plea colloquy. [Trial counsel] testified that he advised [Petitioner] to plea to all of the charges even though there was some evidence that [Petitioner] did not commit at least one of the burglaries, but that in exchange for the plea to all of the charges, the State had agreed to remove the twenty-year mandatory minimum sentence. [Trial counsel] testified that he would never advise a client to say "yes" or agree to everything at the plea colloquy. [Trial counsel] further testified that he would have advised [Petitioner] of the maximum sentence prior to the plea hearing and that during the plea colloquy when [Petitioner] was advised of the maximum sentence and [Petitioner] answered that he understood, [Trial counsel] believed that [Petitioner] was telling the truth. [Trial counsel] testified that although he informed [Petitioner] that he assumed the State would seek a term of imprisonment of seven years, he did not promise [Petitioner] that the State would seek seven years. [Trial counsel] further testified that he informed [Petitioner] that the Court could sentence [Petitioner] from the minimum to the maximum penalty. [Trial counsel] testified that that he informed [Petitioner] that the only way to get a Youthful Offender sentence was to plea open to the Court since the State was not offering it. [Trial counsel] testified that he did not advise [Petitioner] that he would not receive a sentence more than seven years imprisonment, that he hoped that [Petitioner] would not receive a sentence more than seven years imprisonment, that he hoped that [Petitioner] would get better than seven years imprisonment, but that [Petitioner] understood that he could get a sentence beyond the seven year.

The testimony does not indicate that counsel misinformed [Petitioner] concerning the possible sentence he faced. Rather, the testimony shows that [Petitioner] maintains he lied under oath during the plea colloquy. Claims of ineffective assistance of counsel or coercion are refuted by the written or oral statements to the contrary made at the time of the plea. *Rackey v. State*, 571 So. 2d 533 (Fla, 1st DCA 1990); *Stewart v. State*, 511 So. 2d 375 (Fla. 1st DCA 1987); *Jauregui v. State*, 652 So. 2d (Fla. 3rd DCA 2005). The plea form indicates the maximum sentence [Petitioner] could have received was life imprisonment and was explained to the [Petitioner] at the hearing. During the plea colloquy, the maximum sentence of life was indicated several times and Defendant stated under

> oath that he understood. [Petitioner] was also informed of the three-year minimum mandatory sentence during the plea colloquy (T. 3, 13). [Petitioner] stated he was entering the plea freely, had discussed it with his trial counsel, and understood that it was solely his decision. (T. 10-11). [Petitioner] stated that no one had promised him anything in exchange for is plea, that he understood that he was agreeing to be sentenced by the judge with no promises as to the sentence that would be imposed, that the State could ask for any sentence, and that he was satisfied with counsel. (T. 10-13). During the plea colloquy, Defendant stated he read, understood, signed, and reviewed the plea form with his attorney. (T11-12).

(Doc. 7 at 14-16).

During Petitioner's Rule 3.850 hearing to withdraw his plea Judge Fuller held:

> Notably, in the instant case, the trial court found that [Trial counsel] did not misadvise [Petitioner]. Thus, counsel was not ineffective. And this Court, having the benefit of the record before it likewise finds based on the record evidence that no misadvice had been given. The record reflects that [Petitioner] and his family did not want [Petitioner] to go to prison, were interested in securing the least amount of prison time if such a sentence was unavoidable, and thought this goal could be achieved by asking the court to sentence [Petitioner] as a youthful offender, which required [Petitioner] to enter an open plea. [Petitioner] was informed at the plea hearing that he was entering into a plea with no guarantees and that the court could sentence him to life, and [Petitioner] stated that he understood. Thus, [Petitioner] was hoping for a youthful offender sentence, and upon the advice of his family and counsel choose to enter into an open plea with the full knowledge that he could receive the statutory maximum.

(Ex. 9 at 381-82).

Contrary to Petitioner's argument, the evidence in the record shows trial counsel did not guarantee that he would receive a term of less than seven years imprisonment if he pled open to the Court. After hearing the testimony and reviewing the evidence at Petitioner's hearing on the motion to withdraw his plea, Judge Volz found that Petitioner was not misadvised by trial counsel, that he was informed, and agreed and understood

11

that he could be sentenced to life in prison if he plead in open court. (Ex. 1, Vol. IV at 89). Judge Fuller found the same during the hearing on Petitioner's Rule 3.850 motion. Petitioner agreed that counsel informed him that the charges carried a mandatory minimum of three years. (Ex. 1 at 77-78). Petitioner also acknowledged that he was not promised anything to plea in open court. (Ex. 1, Vol. III at 77). Petitioner was informed at his plea he was being sentenced by the judge with no promises and he agreed. The State — with Petitioner present — recommended a sentence of ten years with five years-probation upon release. (Ex. 9 at 451).

While Petitioner later said that he lied to the plea court about his agreement, such admissions only serve to reduce Petitioner's credibility. Courts have long held that representations during the plea proceeding, and those of lawyers, and the court's findings accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." See *Blackledge v. Allison,* 431 U.S. 63, 74 (1977); *Krecht v. United States*, 846 F. Supp. 2d 1268, 1280 (S.D. Fla. 2012). Such solemn declarations in open court carry a strong presumption of truthfulness. *Id.* Based upon the Supreme Court's holding in *Blackledge*, the Court finds that Petitioner's statements he lied about accepting the plea at the plea colloquy are not credible.

The record establishes that trial counsel did not misadvise Petitioner but instead provided the necessary information for him to make a reasonable determination about whether to plead open to the court in hopes of receiving a lesser Youthful Offender sentence or to accept the State's offer of seven years. Petitioner accepted the risk, pled open to the Court, and Judge Volz sentenced Petitioner to a harsher sentence than what

he expected. (Ex. 9 at 451). Petitioner has failed to establish the first *Lafler* prejudice prong.

### (2) *Whether Judge Volz would have Accepted the Terms*

There is no guarantee that Judge Volz would have accepted the State's offer of seven years in exchange for the Petitioner's plea. Judge Volz rejected trial counsel's motion to sentence petitioner as a Youthful Offender because of the seriousness of Petitioner's crimes and the fact that Petitioner was already eighteen years old when he was sentenced. At sentencing, Judge Volz commented that "[w]ell he may have been seventeen, but he had a gun and that graduates him big time." (Ex. 1 at 175). Judge Volz continued "very few people go to prison their first time out. It takes a large effort to do that." (Ex. 1 at 176). Judge Volz then sentenced Petitioner on Count I, burglary while armed, to 120 months imprisonment to be followed by 120 months of probation. (Ex. 1 at 176).

Given that Petitioner fired a gun at the victim, it is not unreasonable to conclude that Judge Volz would have rejected the State's seven-year sentence for a longer term of imprisonment. Judge Volz rejected the States recommendation of five years-probation and increased Petitioner's term of probation to ten years. (Ex. 1 at 176). This is a strong indication that he would not have accepted a seven-year sentence under the circumstances in this case. Upon review of Petitioner's crimes and Judge Volz's statements at the sentencing, it is improbable that Judge Volz would have accepted the State's offer of seven years. Petitioner fails to establish the second *Lafler* prejudice prong.

(3) *Whether the Conviction or Sentence, or Both, under the State's Offer Would have been Less Severe than Under the Judgment and Sentence*

Finally, Petitioner's claim he would have received a shorter sentence if trial counsel had not misadvised him lacks merit. The State offered Petitioner a seven-year sentence, however, the Court had discretion to impose a sentence up to a life sentence for Count I. (Ex. 1 at 89). It is clear from Judge Volz's statements at sentencing, he believed that Petitioner's possession and use of a gun during his crimes had "graduated him big time." Judge Volz sentenced Petitioner to ten years and Petitioner has offered nothing from the record that would suggest that Judge Volz would have accepted a lesser sentence than the ten-year sentence he imposed. Nevertheless, even accepting that Judge Volz would have accept the seven-year sentence offered by the State, Petitioner failed to establish two of the prejudice prongs from *Lafler*, and thereby, fails to establish prejudice under *Strickland*.

## CONCLUSION

The record before the Court establishes that trial counsel properly advised Petitioner that he could receive a sentence longer than the seven-year sentence offered by the State in its plea offer if he chose to plead open to the Court to obtain a lesser sentence. Therefore, Petitioner did not receive ineffective assistance of counsel.

Accordingly, it is now

**ORDERED:**

1. Petitioner Julian Arocho's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 1) is **DENIED**.
2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 17th day of June 2019.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-2

Copies:
All Parties of Record